1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Gyula Attila Incze,

                  Petitioner,

    v.

ICE Field Office Director,

                  Respondent.

CASE NO. 2:21-cv-00074-JLR-DWC

REPORT AND RECOMMENDATION

Noting Date: July 16, 2021

## I.    INTRODUCTION

Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action *pro se* to obtain release from detention or a bond hearing. Currently before the Court is the Government's return memorandum and motion to dismiss and accompanying declarations. Dkts. 10, 11, 12. Petitioner has filed a response, along with two "supplements". Dkts. 13, 14, 15. The Government has filed a reply, together with a supplemental declaration. Dkts. 15, 16. Having considered the parties' submissions, the balance of the record,

and the governing law, the Court recommends the Government's motion to dismiss be GRANTED, the petition be DENIED, and this case be DISMISSED with prejudice.

## II.    BACKGROUND

Petitioner, a native and citizen of Romania, was admitted to the United States as a refugee on January 30, 1992. Dkt. 12 at ¶ 3. On February 26, 1993, petitioner adjusted his status to lawful permanent resident, retroactive to his entry date. *Id*. at ¶4.

Between 1994 and 2016, petitioner was convicted of multiple offenses in Florida, for which he was sentenced to various terms of probation. *Id*. at ¶¶ 5–9. On October 31, 2017, petitioner was convicted in Linn County, Oregon of the offense of Unlawful Delivery of Methamphetamine, for which he was sentenced to an indeterminate term of 30 days in jail and 36 months of supervision. *Id*. at ¶10; Dkt. 11-3 at 3. On April 18, 2018, petitioner was convicted in Benton County, Oregon of Delivery of Methamphetamine and sentenced to ten months in prison. Dkt. 12 at ¶16. On July 15, 2019, petitioner was sentenced to serve 25 months in prison for violation of his probation with respect to his Linn County offense. Dkt. 11-3 at 6–7. On July 15, 2020, while serving his sentence, petitioner was convicted in Benton County, Oregon on a guilty plea to Unlawful Possession of Methamphetamine, a misdemeanor, and was sentenced to 30 days in jail, to be served concurrently with other sentences. Dkt. 11-3 at 7–9. Petitioner was released from prison on December 30, 2020 and turned over to ICE custody. Dkt. 12 at ¶¶ 3–4.

ICE had previously pursued removal proceedings against petitioner after his Linn County conviction, in which petitioner ultimately conceded removability on March 6, 2018. Dkt. 12 at ¶14. However, on January 22, 2019, an Immigration Judge granted petitioner cancellation of removal. *Id*. at ¶ 18. On January 6, 2021, ICE served petitioner with a Notice to Appear in his current immigration proceeding, charging him with removability pursuant to 8 U.S.C.

§1227(a)(2)(B)(i), based upon his 2020 Benton County misdemeanor methamphetamine

possession conviction. Dkt. 11-4 at  2, 5.

Petitioner appeared before an Immigration Judge ("IJ") for a bond hearing on January 26,

2021 and was denied release because detention was statutorily mandated. Dkt. 12 at ¶21.

Petitioner reserved his right to appeal the decision but did not file an appeal at that time. Dkt. 12

at ¶21.[1] However, petitioner has attached to his reply materials in this case a copy of an appeal to

the Board of Immigration Appeals ("BIA") dated May 7, 2021. Dkt. 17. Petitioner has also

received at least two custody redeterminations pursuant to the class action order in *Fraihat v.*

*ICE,* 445 F.Supp.3d 751 (C.D. Cal. Apr. 20, 2020), as a detainee identified as potentially at

higher risk for serious illness due to COVID-19. Dkt. 7 at 167; Dkt. 14 at 18. In both instances—

on January 11, 2021 and March 11, 2021—ICE determined petitioner posed a threat to public

safety and continued detention was appropriate. *Id*.

On March 22, 2021, following a hearing, the IJ denied petitioner's applications for relief

and ordered petitioner removed to Romania or, in the alternative, Austria or Hungary. Dkt. 12 at

¶ 22. Petitioner initially waived his right to appeal (Dkt. 12 at ¶25), but he has since filed an

appeal with the BIA, which was accepted on April 21, 2021 and is currently pending. Dkt.16 at ¶

8.

---

[1] Petitioner has attached to his reply materials in this case a copy of an appeal to the BIA
dated May 7, 2021. Dkt. 17 at 25–27.

1

## III.    DISCUSSION

2

**A.    Statutory Basis for Petitioner's Detention**

3      Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of

4 noncitizens who are in removal proceedings.[2] Petitioner asserts he is detained pursuant to 8

5 U.S.C. 1226(a). Dkt. 7 at 3. The Government contends petitioner's detention is instead governed

6 by Section 1226(c). Dkt. 15 at 1.

7      The Government is correct. Section 1226(a) grants DHS the discretionary authority to

8 determine whether a noncitizen should be detained, released on bond, or released on conditional

9 parole pending the completion of removal proceedings, *unless* the noncitizen falls within one of

10 the categories of criminals described in § 1226(c), for whom detention is mandatory until

11 removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, __ U.S. __, 138 S.

12 Ct. 830, 846–48 (2018). Section 1226(c) includes any noncitizen who "is deportable by reason of

13 having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of

14 this title." 8 U.S.C. § 1226(c)(1)(B). Petitioner was found to be deportable pursuant to 8 U.S.C. §

15 1227(a)(2)(B)(i)[3], and therefore falls into this category. Dkt. 11-4 at 5; Dkt. 11-1. Accordingly,

16

17 _____

18      [2] Although the relevant statutory sections refer to the Attorney General, the Homeland
Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most
19 immigration law enforcement functions from the Department of Justice ("DOJ") to the
Department of Homeland Security ("DHS"), while the DOJ's Executive Office for Immigration
20 Review retained its role in administering immigration courts and the BIA. *See Hernandez v.
Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).
21      [3] That statute provides: "Any [non-citizen] who at any time after admission has been
convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State,
22 the United States, or a foreign country relating to a controlled substance (as defined in section
802 of Title 21), other than a single offense involving possession for one's own use of 30 grams
23 or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i).

24

1  petitioner's detention is governed by Section 1226(c) and is statutorily mandated until his

2  removal proceedings have concluded.

3  Petitioner argues his immigration detention has now moved from § 1226(c) to § 1226(a)

4  under *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008). Dkt. 7 at

5  3–4. To the extent *Casas-Castrillon* remains authoritative,[4] it does not shift the basis of

6  petitioner's detention here. Under *Casas-Castrion*, the shift from § 1226(a) to § 1226(c) would

7  occur only after an alien's removal proceedings have concluded or are final. *See Casas-*

8  *Castrillon*, 535 F.3d at 948 ("Once Casas' proceedings before the BIA were complete, the

9  Attorney General's authority to detain him under § 1226(c) ended and that authority shifted

10  instead to § 1226(a)."). Here, petitioner's removal is not final; in fact, the record shows the

11  determination regarding his removal is still pending before the BIA. Dkt. 16 at ¶ 8.

12  Petitioner is mandatorily detained under 8 U.S.C § 1226(c) and is therefore not statutorily

13  eligible for an individualized determination as to whether he should be released on bond. *See*

14  *Jennings*, 138 S. Ct. at 842, 847.

15  **B.    Due Process**

16  Even if authorized under Section 1226(c), petitioner's continued detention must comport

17  with due process. Petitioner argues his detention has become prolonged and violates his due

18

19

20  [4] The Ninth Circuit has not yet addressed whether its holding in *Casas-Castrion* remains viable in light of the Supreme Court's decision in *Jennings.* Other courts in this District have

21  concluded that it is not. *See Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 927–28 (W.D. Wash. 2020) (Martinez, C.J., adopting R. & R. of Peterson, M.J., concluding that *Casas-*

22  *Castrillon* is clearly irreconcilable with *Jennings*); *Muhamd v. ICE Field Office Director,* No. 20-605-RAJ, Dkt. 8 (W.D. Wash. Sept. 14, 2020) (R. & R. of Peterson, M.J., same). Courts in

23  other Districts have reached the opposite conclusion. *See, e.g.*, *Avilez v. Barr*, No. 19-8296, 2020 WL 1704456, at *2–3 (N.D. Cal. Apr. 8, 2020)*, appeal pending,* No. 20-16142 (9th Cir.). The Court need not address this issue because, as discussed above, *Casas-Castrion* would not shift

24  the basis of petitioner's detention here.

1    process rights; he requests release or a bond hearing. The Government counters that petitioner's

2    continued mandatory detention is reasonable. For the reasons discussed below, the Court

3    concludes petitioner's detention has not become unreasonably prolonged and the Constitution

4    therefore does not, at this time, require that he be provided a bond hearing.

5        In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process

6    challenge to § 1226(c). The Supreme Court explained Congress drafted § 1226(c) to respond to

7    the high rates of crime and flight by removable noncitizens convicted of certain crimes and held

8    "the Government may constitutionally detain deportable [noncitizens] during the limited period

9    necessary for their removal proceedings." *Id.* at 518–21, 526. In so holding, the Supreme Court

10   stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite

11   termination point" that, in the vast majority of cases, resulted in detention of less than about five

12   months. *Id.* at 529–30. Justice Kennedy's concurring opinion, which created the majority,

13   reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized

14   determination as to his risk of flight and dangerousness if the continued detention became

15   unreasonable or unjustified." *Id.* at 532.

16       Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows

17   for arbitrary prolonged detention without any process is constitutional or that those who founded

18   our democracy precisely to protect against the government's arbitrary deprivation of liberty

19   would have thought so." *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir.

20   2018). Overwhelmingly, district courts considering the constitutionality of prolonged mandatory

21   detention—including other judges in this District—"agree that prolonged mandatory detention

22   pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to

23   due process.'" *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D.

24

1  Wash. May 23, 2019), *R. & R. adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13,

2  2019) (quoting *Sajous v. Decker*, No. C18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23,

3  2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D.

4  Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b)

5  without a bond hearing violates due process."); *Djelassi*, 434 F. Supp. 3d at 923–24 (granting

6  habeas petition and ordering bond hearing for noncitizen whose mandatory detention had

7  become unreasonably prolonged).

8  **C.    Test to Determine Reasonableness of Prolonged Detention Under § 1226(c)**

9      Courts in this District have adopted a "multi-factor analysis that many other courts have

10  relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*, 2019

11  WL 5968089 at *9. Those factors include:

12      (1) the total length of detention to date; (2) the likely duration of future detention;
        (3) whether the detention will exceed the time the petitioner spent in prison for the
13      crime that made him [or her] removable; (4) the nature of the crimes the petitioner
        committed; (5) the conditions of detention; (6) delays in the removal proceedings
14      caused by the petitioner; (7) delays in the removal proceedings caused by the
        government; and (8) the likelihood that the removal proceedings will result in a
15      final order of removal.

16  *Id.* (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). These

17  factors are derived from the Supreme Court's decisions in *Demore* and *Zadvydas v. Davis*, 533

18  U.S. 678 (2001), and pre-*Jennings* circuit court cases holding, as a matter of constitutional

19  avoidance, that § 1226(c) implicitly authorizes detention for only a reasonable amount of time.

20  *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL

21  4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222–23 (3d Cir.

22  2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269–70 (6th Cir.

23  2003), *abrogated by Jennings*, 138 S. Ct. 830; *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir.

24

2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).[5] The Court discusses each factor below,

ultimately concluding they weigh against granting petitioner a bond hearing.

      1.    *Length of Detention to Date*

      The length of detention is the most important factor. *E.g.*, *Martinez*, 2019 WL 5968089,

at *9; *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer

mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is

to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (nearly 13-month detention weighed in

favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp.

3d 959, 963–64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a

reasonable length of detention, petitioner's [12-month] detention has lasted beyond the 'brief'

period assumed in *Demore*.");  *De Oliveira Viegas v Green*, 370 F.Supp.3d 443, 449–50 (D. N.J.

2019) (courts in the District of New Jersey generally deny habeas relief where the petitioner has

been detained for a year or just over a year, but granting relief where petitioner was detained 15

months).

      Here, at the time petitioner filed his petition, he had been detained for only one month.

Dkt. 7 at 1. A one-month period of detention is not unreasonable. *Demore*, 538 U.S. 531

(upholding constitutionality of § 1226(c) where petitioner had been detained for six months).

Although this case has now been pending for five months, bringing petitioner's total confinement

to date to six months, that is still a period courts consider reasonable. *Id.*; *see also Zadvydas*, 533

---

    [5] The Government analyzes Petitioner's detention under the three-factor test outlined in
*Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires considering (1) the private interest
affected, (2) the government's interest, and (3) the value added by additional or substitute
procedural safeguards in the situation before the court." *Banda*, 385 F. Supp. 3d at 1106 (citing
*Mathews*, 424 U.S. at 334). For the reasons explained by Judge Robart in *Banda*, the Court
declines to apply the *Mathews* test in this case. *See id.* at 1106–07.

U.S. at 701 (six-month period of detention following entry of final removal order is "presumptively reasonable"). The Court finds this factor weighs in favor of the Government.

2. *Likely Duration of Future Detention*

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9.

Petitioner's appeal to the BIA commenced in April, 2021 and may take six months or longer to resolve. Dkt. 16 at ¶7. If the BIA affirms, petitioner will have the opportunity to file a petition for review with the Court of Appeals for the Ninth Circuit, which may not be resolved for over two years. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited 6/21/21). Accordingly, this factor weighs in petitioner's favor.

3. *Criminal History*

Third and fourth, the Court reviews the length of detention compared to petitioner's criminal sentence and the nature of his crimes. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F. Supp. 3d at 262. The relevance of these factors is they are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F.Supp.3d at 262.

Petitioner has already been detained longer than the sentence for the crime upon which his removal is based—a misdemeanor for which he was sentenced to thirty days. The third factor therefore weighs in petitioner's favor. *See Sajous*, 2018 WL 2357266, at *11 (detention over four times longer than sentence for underlying offenses was unreasonable).

1    Petitioner also argues the misdemeanor at issue in his removal proceedings does not

2  render him dangerous. Dkt. 13 at 4 (arguing the .66 grams of methamphetamine of which he was

3  convicted of possessing would under current law be punished with a "simple fine of $100"). But

4  petitioner disregards his additional criminal history, including two felony convictions for the

5  delivery of illegal drugs, the second of which appears to have occurred while petitioner was on

6  probation and to have led to a 25-month sentence for a probation violation. Dkt. 11-2 at 3. In

7  light of petitioner's criminal history—and particularly his probation violation—the Court finds

8  the fourth factor tips in favor of the Government.

9         4.    *Conditions of Detention*

10    Next, the Court considers the conditions at the NWIPC where petitioner is detained.

11  *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [noncitizen]

12  is being held resemble penal confinement, the stronger [the] argument that he is entitled to a

13  bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quoted source

14  omitted).

15    Petitioner contends he has health conditions that render him vulnerable to  COVID-19

16  and his continued detention increases his risk of infection. Dkt. 13 at 1–2. Petitioner submits

17  evidence that on December 10 and 16, 2020, before his release from prison in Oregon, he tested

18  positive for SARS-COV-2. Dkt. 7 at 60–61. However, petitioner tested negative on December

19  21, 2020, prior to his transfer to NWIPC. Dkt. 7 at 62. The Government notes petitioner has had

20  multiple negative test results since his arrival at NWIPC, stating he was tested on January 11,

21  2021, March 11, 2021 and April 15, 2021, all with negative results. Dkt. 16 at ¶ 5. Further, the

22  Government has submitted evidence petitioner was fully vaccinated against COVID-19 on

23  March 24, 2021. *Id*. at ¶ 6.

24

1    Petitioner does not present evidence that there is a significant presence of infection from

2    COVID-19 at NWIPC. And even if petitioner were to become exposed to the virus, he has been

3    fully vaccinated. The Court concludes this factor is neutral.

4        5.    *Delays in Removal Proceedings*

5        Under the sixth and seventh factors, the Court considers "the nature and extent of any

6    delays in the removal proceedings caused by the petitioner and the government, respectively."

7    *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to

8    removal . . . and such challenges to his removal cannot undermine his claim that detention has

9    become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 965 (citing *Hernandez v. Decker*, No. 18-

10   5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen

11   opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention,

12   especially where the Government fails to distinguish between bona fide and frivolous arguments

13   in opposition.")). Courts, however, should be "sensitive to the possibility that dilatory tactics by

14   the removable [noncitizen] may serve not only to put off the final day of deportation, but also to

15   compel a determination that the [noncitizen] must be released because of the length of his [or

16   her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the

17   [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of

18   obtaining release cuts against the [noncitizen]."). Thus, this factor weighs against finding

19   detention unreasonable when a noncitizen "has 'substantially prolonged his stay by abusing the

20   processes provided,'" but not when he "simply made use of the statutorily permitted appeals

21   process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*,

22   556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y.

23   2019). With respect to the Government, "If immigration officials have caused delay, it weighs in

24

1   favor of finding continued detention unreasonable. . . . Continued detention will also appear

2   more unreasonable when the delay in the proceedings was caused by the immigration court or

3   other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and

4   *Reid*).

5         The parties do not contend there was any unreasonable delay during petitioner's removal

6   proceedings before the IJ. Petitioner changed his mind after initially waiving his right to appeal

7   to the BIA, but his change of heart led to only a month's delay. The sixth factor therefore weighs

8   in petitioner's favor.

9         There is similarly no evidence of "intentional action on behalf of government officials."

10   *Martinez*, 2019 WL 5968089, at *10. Here, petitioner's appeal to the BIA has been pending just

11   over a month, which is not unduly delayed.  Accordingly, the seventh factors weighs in the

12   Government's favor.

13       6.    *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

14         Finally, the Court considers "the likelihood that the removal proceedings will result in a

15   final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers

16   whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at

17   *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for

18   relief from removal, presumably the noncitizen will be removed from the United States, and

19   continued detention will at least marginally serve the purpose of detention, namely assuring the

20   noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and

21   *Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the

22   categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*,

23   819 F.3d at 499–500).

24

1    Petitioner is pursuing an appeal of his removal order before the BIA. The record does not

2    contain sufficient information to enable the Court to make a prediction of the likelihood of

3    petitioner's success, but in the absence of any evidence petitioner's appeal is frivolous or taken

4    in bad faith, the court concludes this factor is neutral.

5        7.    *Weighing the Factors*

6        As discussed above, three factors weigh in petitioner's favor, three factors weigh in the

7    Government's favor, and two factors are neutral. The most important factor—the length of

8    petitioner's detention—favors the Government. The Court therefore concludes petitioner's

9    mandatory detention cannot be deemed at this point to have been prolonged and is not

10   unreasonable. Petitioner is therefore not entitled to a bond hearing at this time.

11   **D.    Petitioner is Not Entitled to Release**

12       Petitioner also requests release from detention. A noncitizen is entitled to release if he

13   can show his detention is indefinite within the meaning of the Supreme Court's decision in

14   *Zadvydas*. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062–63 (9th Cir. 2008) (applying

15   *Zadvydas* to habeas petitioner who was subject to § 1226(a) detention). In *Prieto-Romero*, the

16   Ninth Circuit held the petitioner's detention was not indefinite because the government could

17   repatriate him to Mexico if his pending petition for review was unsuccessful. *Id.* Petitioner here

18   does not present any evidence ICE will not be able to remove him if he is ultimately ordered

19   removed. Accordingly, petitioner's removal is not indefinite, and he is not entitled to an order of

20   release.

21   **E.    Conditions of Confinement**

22       Petitioner contends his confinement places him at risk to COVID-19 infection in

23   violation of his Fifth Amendment rights. Dkt. 13 at 4. The Court construes petitioner to argue

24   both that his conditions of confinement pose a substantial risk of serious harm and that those

conditions amount to punishment. The Court concludes petitioner has failed to present evidence to establish either claim. [6]

1.     *Right to Reasonably Safe Conditions*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). The government thus violates the Due Process Clause if it fails to provide civil detainees with "food, clothing, shelter, medical care, and reasonable safety." *Id.* at 200. To establish such a claim, petitioner must show:

> (i) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (ii) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (iii) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (iv) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see also Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020) (addressing reasonable safety claim raised by immigration

---

[6] The Ninth Circuit has not definitively settled whether a Federal detainee's conditions of confinement claim is cognizable in a habeas petition relating to immigration detention. *See Nettles v. Grounds*, 830 F.3d 922, 930–931 (9th Cir. 2016) (for a state court petitioner, in state prison custody after being convicted under state law, 42 U.S.C. Section 1983 is the exclusive vehicle for bringing a cause of action that is "not within the core of habeas corpus"). The majority of other circuits have held that such a claim is cognizable in habeas. *See, e.g. Aamer v. Obama*, 742 F.3d 1023, 1036–37 (D.C. Cir. 2014) (collecting cases). Another court in this District proceeded to analyze a similar conditions of confinement claim in a Section 2241 proceeding, in light of the Ninth Circuit's recent transfer of several emergency conditions of confinement motions to this District as habeas matters. *Dawson v. Asher*, No. C20-0409 JLR-MAT, 2020 WL 1704324, at *9 (W.D. Wash. Apr. 8, 2020).

1   detainees during the COVID-19 pandemic).

2       With respect to the third element, the Government's conduct must be "objectively

3   unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular

4   case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015))

5   (alterations and internal quotation marks omitted). Objective unreasonableness requires "more

6   than negligence but less than subjective intent—something akin to reckless disregard." *Castro*,

7   833 F.3d at 1071 (quoted source omitted). "To satisfy the fourth element, a plaintiff need only

8   prove a 'sufficiently imminent danger[],' because a 'remedy for unsafe conditions need not await

9   a tragic event.'" *Roman*, 2020 WL 6040125, at *6 (quoting *Helling v. McKinney*, 509 U.S. 25,

10  33–34 (1993)).

11      Petitioner contends the Government has subjected him to conditions of confinement that

12  increase his risk of infection with COVID-19. But petitioner sets forth no facts particular to his

13  confinement at NWIPC demonstrating he has been placed at risk for the transmission of COVID-

14  19. Another court in this District has rejected claims conditions at NWIPC pose an undue risk.

15  *Dawson v. Asher*, No. C20-0409-JLR-MAT, 2020 WL 6810978, at *9 (W.D. Wash. Aug. 17,

16  2020), *report and recommendation adopted,* No. C20-0409-JLR, 2020 WL 6799009 (W.D.

17  Wash. Nov. 19, 2020) (finding in light of "substantial measures" implemented at NWIPC to

18  prevent and contain the virus' spread, "'the court cannot reasonably find that an outbreak of

19  COVID-19 at the [NWIPC] is likely to occur.'") (quoting *Castaneda Juarez v. Asher*, No. 20-

20  700-JLR-MLP, 2020 WL 3163208, at *7 (W.D. Wash. June 12, 2020)).

21      Furthermore, petitioner has not established he would be endangered in the event of

22  exposure to COVID-19. He asserts he suffers from health conditions—including that he is a

23  former smoker, has asthma and has a high body mass index—which would place him at risk if he

24

were to become re-infected with COVID-19. Dkt. 13 at 1–2.  However, since the time petitioner

filed his petition, he has been fully vaccinated. Dkt. 16 at ¶6. *See Washington v. Warden of USP-*

*Canaan*, No. 1:21-CV-211, 2021 WL 1123330, at *6 (M.D. Pa. Mar. 24, 2021) (rejecting claim

of unsafe conditions of confinement, due in part to vaccination of inmates and staff); *United*

*States v. Kosic*, No. 18 CR. 30(PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021),

*appeal pending*, No. 21-84 (2d Cir.) (collecting cases finding vaccination sufficiently mitigates

risk such that an inmate's health conditions no longer present extraordinary and compelling

reasons for compassionate release). The record shows the Government has taken reasonable

available measures to abate the risk of COVID-19.

The Court concludes petitioner has not met his burden of establishing he faces a

substantial risk of serious harm from the current conditions of his detention due to the

Governmentt having failed to take reasonable measures to abate any such risk. Accordingly, the

Court recommends petitioner's Fifth Amendment conditions of confinement claim be dismissed.

2.    *Conditions of Confinement Amounting to Punishment*

To evaluate the constitutionality of a pretrial detention condition under the Fifth

Amendment, a district court must determine whether those conditions "amount to punishment of

the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Kingsley*, 576 U.S. at 398.

Punishment may be shown through an express intent to punish or a restriction or condition that

"is not reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539; *see also*

*Kingsley*, 576 U.S. at 398 (clarifying "a pretrial detainee can prevail by providing only objective

evidence that the challenged governmental action is not rationally related to a legitimate

governmental objective or that it is excessive in relation to that purpose").

The Supreme Court has recognized a legitimate government interest in ensuring

noncitizens appear for their removal or deportation proceedings and protecting the community

1  from harm. *See Jennings*, 138 S. Ct. at 836-838; *Demore*, 538 U.S. at 520–22; *Zadvydas*, 533

2  U.S. at 690–91. As discussed above, the Court cannot conclude the current conditions of

3  petitioner's detention place him at substantial risk of serious harm. Accordingly, the Court

4  concludes petitioner has failed to present "objective evidence the challenged governmental

5  action is not rationally related to a legitimate governmental objective or that it is excessive in

6  relation to that purpose." *Kingsley*, 576 U.S. at 398. Thus, petitioner has not established a Fifth

7  Amendment violation and this claim should be dismissed.

8  ## IV.    CONCLUSION

9       The Court recommends GRANTING the Government's motion to dismiss (Dkt. 10),

10  DENYING petitioner's habeas petition (Dkt. 7), and DISMISSING this case with prejudice. A

11  proposed order accompanies this Report and Recommendation.

12       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

13  Procedure, the parties shall have fourteen (14) days from service of this Report to file written

14  objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

15  objections for purposes of appeal. *Thomas v Arn*, 474 U.S. 140 (1985). Accommodating the time

16  limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on, July 16,

17  2021 as noted in the caption.

18       Dated this 30th day of June, 2021.

19

20                                         David W. Christel

21                                         United States Magistrate Judge

22

23

24